UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-61934-CIV-ALTONAGA/O'Sullivan

**ALLSTATE FIRE AND CASUALTY**
**INSURANCE COMPANY**,

      Plaintiff,
v.

**LOUIS PAOLINO**; **JOHN NIXON, III**;
and **DOROTHY MAE STEDMAN**,

      Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court for oral argument on April 30, 2015 [ECF No. 49], regarding Plaintiff, Allstate Fire and Casualty Insurance Company's ("Allstate[']s") Motion for Summary Judgment . . . ("Motion") [ECF No. 36], filed along with a Statement of Material Facts Not in Dispute . . . ("Pl.'s SMF") [ECF No. 37], on March 16, 2015. Defendants, Louis Paolino ("Paolino") and Dorothy Mae Stedman ("Stedman") (together, "Defendants"), filed their Response in Opposition . . . ("Response") [ECF No. 38], along with a Statement of Material Facts Not in Dispute . . . ("Defs.' SMF") [ECF No. 39], on April 2, 2015. Defendant, John Nixon, III ("Nixon") did not respond. Allstate filed its Reply . . . ("Reply") [ECF No. 40], on April 9, 2015. The Court has carefully reviewed the parties' written and oral submissions, the record, and applicable law.

      **I.**      **UNDISPUTED MATERIAL FACTS**

Allstate issued Paolino an automobile insurance policy ("Policy") for the period July 14, 2011 to December 25, 2011. (*See* Complaint . . . [ECF No. 1] Composite Ex. A [ECF No. 1-5]; *see also* Pl.'s SMF ¶ 1). The Policy carried liability coverage in the amount of $250,000 for each

person and $500,000 per occurrence, subject to its terms, limitations, and exclusions. (*See id.* ¶ 2). At the time of the accident at issue, the Policy listed four automobiles on the declarations pages: a 2010 Land Rover Range Rover, a 2011 Mercedes Benz, a 2011 Land Rover, and a 2008 Mercedes Benz. (*See id.* ¶ 3).

The insuring obligation and the liability coverage provisions of the Policy are found at "Part I – Automobile Liability Insurance Bodily Injury – Coverage AA Property Damage – Coverage BB," and state in part:

> **We** will pay for all damages an **insured person** is legally obligated to pay because of **bodily injury** or **property damage**.
>
> Under these coverages, **your** policy protects an **insured person** from claims for accidents arising out of the ownership, maintenance or use, loading or unloading of the **auto we** insure.
>
> **We** will defend an **insured person** if sued as the result of a covered **auto** accident. **We** will defend that person at **our** own expense, with counsel of **our** choice and, [sic] may settle any claim or suit if **we** feel this is appropriate. **We** will not defend an **insured person** sued for damages which are not covered by this policy.

(Policy 27[1] (emphasis in original; alteration added)). "**We**," "**us**," or "**our**" in the Policy refers to Allstate; "**you**" or "**your**" is defined as "the policyholder named on the Policy Declarations and that policyholder's **resident** spouse." (*Id.* 10, 21 (emphasis in original)). In this case, "Louis D [sic] and Sarah Jo Paolino Jr [sic]" (together, the "Paolinos") appear as the "policyholder." (*Id.* (alterations added)).

"**Insured person**" is defined as follows:

  a. While using **your insured auto**
    (i)  **you**;
    (ii)  any **resident**[;] or
    (iii) any other person using it with **your** permission;

---

[1] The page numbering of the Policy's provisions refers to the page numbers given the exhibit by the Court's electronic case management system.

    b.      While using a non-owned **auto**
- (i)    **you**[;]
- (ii)   any **resident** relative of **your** household using a four wheel private passenger **auto** or **utility auto**; or

    c.      Any other person or organization liable for the use of an **insured auto** if the **auto** is not owned or hired by that person or organization, provided the use is by an **insured person** under 1. or 2. above and then only for that person's acts or omissions.

(*Id.* 28 (emphasis in original; alterations added)).

The Policy defines "**insured auto**" as follows:

    a.      any **auto** described on the Policy Declarations. This includes the four wheel private passenger **auto** or **utility auto** with which **you** replace it;

    b.      an additional four wheel private passenger **auto** or **utility auto** of which **you** acquire ownership during the policy period.

            The additional four wheel private passenger **auto** or **utility auto** will be covered by **us** for 30 days immediately after **you** acquire ownership if:
- (i)    **we** or one of **our** affiliates insures all other **auto**(s) **you** own;
- (ii)   the newly acquired four wheel private passenger **auto** or **utility auto** is not covered under any other automobile insurance policy; and
- (iii)  **you** pay any additional premium.

            Coverage will be continued beyond this 30-day period only if:
- (i)    **you** ask **us** to continue coverage within 30 days after **you** acquire the additional four wheel private passenger **auto** or **utility auto**;
- (ii)   **we** or one of **our** affiliates agrees to continue coverage for this additional four wheel private passenger **auto** or **utility auto**; and
- (iii)  **you** pay any additional premium.

    c.      a substitute four wheel private passenger **auto** or **utility auto**, not owned by **you** or a **resident**, being temporarily used with the permission of the owner while **your insured auto** is being serviced or repaired, or if **your insured auto** is stolen or destroyed;

    d.      a non-owned **auto** used by **you** or a **resident** relative with the owner's permission. This **auto** must not be available or furnished for the regular use of an **insured person**; or

> e. a trailer, while attached to an **insured auto**, as defined in a. through d. above, designed for use with an auto. This trailer can not [sic] be used for business purposes with other than a four wheel private passenger **auto** or **utility auto**.

(*Id.* 27–28 (emphasis in original; alteration added)).

Among the Policy's exclusions, with regard to "damages an **insured person** is legally obligated to pay," Allstate "will not pay": "10. **bodily injury** or **property damage** arising out of the use of a non-owned **auto**, substitute **auto** or non-owned **utility auto**, being driven by someone other than **you** or a **resident** relative." (*Id.* (emphasis in original)).

Paolino is one of the policyholders named in the Policy's declarations. (*See* Pl.'s SMF ¶ 9). Nixon brought an action in the state court in Broward County, Florida ("state court case"), naming Stedman and Paolino as defendants. (*See id.* ¶ 10). In the state court case, Nixon alleges Paolino rented a car that Stedman operated with Paolino's permission and consent. (*See id.* ¶ 12). The state court complaint alleges Stedman negligently operated the rental vehicle, colliding with Nixon. (*See id.* ¶ 13). At the time of the accident, Stedman was not related to Paolino, but rather was employed as his housekeeper. (*See id.* ¶¶ 14–15).

The car driven by Stedman was not owned by Paolino, but was rented by him from Enterprise Leasing Company ("Enterprise"). (*See id.* ¶¶ 16, 18). The car was used by Stedman exclusively for the benefit of Paolino. (*See* Defs.' SMF ¶ 21). At the time of the accident, Stedman was returning to the Paolino residence after having picked up items for Paolino at Wal-Mart. (*See id.* ¶¶ 22, 24). The only person to use the car involved in the accident was Stedman, and she used it solely at Paolino's request, to pick up his children, shop, and complete errands for him. (*See id.* ¶ 23). The car was primarily parked at the Paolino residence and in its garage. (*See id.* ¶ 25).

4

Paolino rented the car for Stedman to use because the car Stedman owned, a Hyundai Sonata, had been totaled in a prior accident. (*See* Pl.'s SMF ¶ 19). Stedman's Sonata was insured by GEICO. (*See id.* ¶ 20).

## II. STANDARD

Summary judgment shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a), (c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks omitted)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. July 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations and internal quotation marks omitted)). "[T]he plain language of Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (quoting *Celotex*, 477 U.S. at 322 (alterations and internal quotation marks omitted)). The parties agree there are no material facts in dispute.

### III.   ANALYSIS

#### A.   The Parties' Positions

Allstate filed this declaratory judgment action seeking a judicial interpretation or construction of the Policy pursuant to 28 U.S.C. section 2201(a).[2] (*See* Compl. ¶¶ 1, 29). Allstate requests a declaration that there is no insurance coverage afforded by Allstate for the claims against Paolino and Stedman in the Broward County state court case, and that Allstate has no duty to defend or indemnify Paolino and Stedman in that case. (*See id.* 6). Allstate now moves for final summary judgment. In its Motion, Allstate argues, under the quoted provisions of the Policy and undisputed facts, Stedman is not an insured person; the car rented from Enterprise is not an insured auto; and coverage is excluded given the non-owned rental vehicle was not being driven by Paolino or a resident relative, but by housekeeper and non-resident Stedman. (*See* Mot. 1).

Defendants do not dispute Allstate is entitled to declaratory relief, but insist the insurance coverage obtained by Paolino, as lessee, covers the lessee's permitee — Stedman — under the

---

[2] Under 28 U.S.C. section 2201(a), "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," so long as there is an actual controversy. *Id.*; *see also Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Solutions, Inc.*, 744 F. Supp. 2d 1305, 1309–10 (S.D. Fla. 2010).

Policy. (*See* Resp. 1). In particular, in their written briefing, Paolino and Stedman insist Stedman is an insured person under the Policy, relying upon the Policy's "insured person" definition in subsection c., that states "Any other person . . . liable for the use of an **insured auto** if the **auto** is not owned or hired by that person . . . , provided the use is by an **insured person** under 1. or 2. above and then only for that person's acts or omissions."[3] (*Id.* 4, 6 (alterations added) (quoting Policy 28)). Defendants also argue insurance coverage exists by operation of law, relying on the Florida Dangerous Instrumentality Doctrine, pursuant to which a lessee may permit another to operate a leased vehicle, rendering the owner and his liability insurer vicariously liable. (*See id.* 1, 4–6). Defendants argue the personal automobile insurer of Paolino, as lessee, "shall be primary coverage on a rental vehicle," citing Florida Statute section 627.7263, titled "Rental and leasing driver's insurance to be primary; exception." (*Id.* 5–6).

At oral argument, Defendants focused on the significance of *Budget Rent-A-Car Sys., Inc. v. State Farm Mut. Auto. Ins. Co.*, 727 So. 2d 287 (Fla. 2d DCA 1999), wherein the court observed in dicta: "Although there is no general statutory regulation of non-owned auto coverage, section 627.7263(2) makes it very important that Floridians have non-owned automobile coverage that includes typical rental cars; otherwise they will have little or no insurance protection when they rent such a car. If . . . an[] insurance carrier wishes to exclude coverage for this important risk, it must do so with language far more explicit than the language in this standard contract." *Id.* at 291 (alterations added). Defendants insist the Policy exclusion in paragraph 10. does not satisfy this exacting standard.

In its Reply, Allstate: focuses on the Policy's quoted exclusion; argues Florida's public policy does not preclude an insurer from excluding coverage when an insured rents a car and

---

[3] At oral argument Allstate acknowledged the "insured person" definition's reference in subsection c. to "1. or 2. above" should be interpreted to mean "a. or b. above."

entrusts it to a third-party; argues Defendants' interpretation of Florida Statute section 627.7263, which "provides a mechanism by which a rental or leasing company can shift its primary financial responsibility for damages arising out of an accident involving a rented or leased motor vehicle to the renter or lessee's insurer" (Reply 3), is misplaced; and completely ignores Defendants' repeated reliance on the subsection c. definition of insured person. (*See generally id.*). At oral argument, Allstate clarified and withdrew certain of its arguments. Specifically, Allstate no longer maintains insurance coverage is lacking because Defendants and the car rented from Enterprise do not satisfy the "insured person" and "insured auto" definitions of the Policy. Rather, Allstate insists it is entitled to declaratory relief because exclusion 10. is unambiguous, and under its clear terms, Allstate never undertook the risk of paying damages arising out of the use of a non-owned auto being driven by someone other than the Paolinos or a resident relative.

The Court addresses the parties' several contentions below.

### B. The Insurance Policy

#### 1. Governing Principles of Contract Construction

As the Court has jurisdiction owing to diversity of citizenship, and the parties agree Florida law applies to the policy issued in Broward County, Florida law applies. *See Rolyn Cos., Inc. v. R&J Sales of Tex., Inc.*, 671 F. Supp. 2d 1314, 1322 (S.D. Fla. 2009) (citation omitted). "Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy. As with all contracts, the interpretation of an insurance contract is a question of law to be determined by the court." *Vozzcom, Inc. v. Beazley Ins. Co.*, 666 F. Supp. 2d 1321, 1328 (S.D. Fla. 2009) (internal quotation marks and citations omitted). "[I]nsurance contracts must be construed in accordance with the plain language of the policy." *Id.* (alteration added; internal quotation marks and

citation omitted). Further, the insurance policy is read as a whole, with the Court endeavoring to give each provision its full meaning and operative effect. *See id.* at 1329 (citations omitted).

If the policy language "is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered ambiguous." *Id.* (internal quotation marks, citations, and alteration omitted). In that case, the "ambiguous provision is construed in favor of the insured and strictly against the drafter." *Id.* (internal quotation marks and citations omitted). And where interpretation "involve[s] exclusions to insurance contracts, the rule is even clearer in favor of strict construction against the insurer: exclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured." *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1228 (11th Cir. 2005) (quoting *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986)). Nevertheless, the Court may not "rewrite a contract of insurance[,] extending the coverage afforded beyond that plainly set forth in the insurance contract." *AAA Life Ins. Co. v. Nicolas*, 603 So. 2d 622, 623 (Fla. 3d DCA 1992) (alteration added; citation omitted).

2. Conditions for Liability Coverage Under the Policy

"A person seeking to recover on an insurance policy has the burden of proving a loss from causes within the terms of the policy and if such proof of loss is made within the contract of insurance, the burden is on the insurer to establish that the loss arose from a cause that is excepted from the policy." *U.S. Liab. Ins. Co. v. Bove*, 347 So. 2d 678, 680 (Fla. 3d DCA 1977) (citations omitted). As stated, the insurer Allstate has the burden to establish a policy exclusion applies. *See CDC Builders, Inc. v. Amerisure Mut. Ins. Co.*, No. 10-21678-CIV, 2011 WL 4454937, at *11 (S.D. Fla. Aug. 16, 2011) (citations omitted). Once the insurer establishes the

9

applicability of an exclusion, the insured must prove an exception to the exclusion. *See id.* (citation omitted).

The Policy unambiguously states Allstate "will not pay for any damages an **insured person** is legally obligated to pay because of" "10. **bodily injury** or **property damage** arising out of the use of a non-owned **auto**, substitute **auto** or non-owned **utility auto**, being driven by someone other than **you** or a **resident** relative." (Policy 28–29). The term "non-owned **auto**" is not defined in the Policy. Yet, it is clear the rental car rented by Paolino and operated by Stedman is a "non-owned auto" as that term is used in the insurance contract. *See Caldwell v. Allstate Ins. Co.*, 417 So. 2d 1040, 1040 (Fla. 1st DCA 1982) (construing term "non-owed auto" to be any automobile not owned by the named insured). It is equally clear the Enterprise car is not a "substitute **auto**," as under subsection 2.c. of the Policy, "substitute **auto**" is defined to mean a vehicle "being temporarily used with the permission of the owner while **your insured auto** is being serviced or repaired, or if **your insured auto** is stolen or destroyed." (Policy 28). Nor is the Enterprise vehicle a "non-owned **utility auto**." (*See id.* 20).

Accepting the leased car is a non-owned auto, the undisputed facts further show it was "being driven by someone other than" the Paolinos or their resident relative. At the time of the accident, the car was being operated by Stedman, who is certainly not "you"— meaning the Paolinos — nor a "resident relative" of "you." "Generally, courts will strive to interpret an automobile insurance policy based on the definitions contained within the policy." *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 570 (Fla. 2011) (internal quotation marks and citation omitted) (finding plain language of household exclusion precluded coverage for bodily injuries suffered by members of the household of a permissive-driver insured). Allstate plainly stated in the contract of insurance it would not pay for damages — implicitly advising it would

not assume the risk — arising out of the use of a non-owned auto being driven by someone other than the Paolinos or their resident relatives.

Defendants have not proven an exception to the Policy's exclusion from coverage for damages arising from the use of an auto "being driven by someone other than **you** or a **resident** relative" contained in paragraph 10. Allstate is entitled to the declaratory relief it seeks unless such judgment is contrary to public policy. *See* 7A COUCH ON INS. § 110:21 (3d ed. 2014) ("An insurer has the right to restrict its liability to cases in which the automobile is operated by a particular person unless such a restrictive clause is, in some other respects, contrary to public policy or good morals."); *McIntyre v. Progressive Am. Ins. Co.*, 563 So. 2d 819, 820 (Fla. 5th DCA 1990) ("So long as no public policy is violated . . . an insurer has a right to decide which risks it will and which it will not insure against." (alteration added; citation omitted)).

    C.    **Defendants' Public Policy Arguments**

Defendants rely on the Florida Dangerous Instrumentality Doctrine (*see* Resp. 4–6), which originated in the 1920 Florida Supreme Court case *Southern Cotton Oil Co. v. Anderson*, and which recognizes "one who authorizes and permits an instrumentality that is peculiarly dangerous in its operation to be used by another on the public highway is liable in damages for injuries to third persons caused by the negligent operation of such instrumentality on the highway by one so authorized by the owner." 86 So. 629, 638 (1920); *see also Aurbach v. Gallina*, 753 So. 2d 60, 62 (Fla. 2000) (holding that, through the doctrine, Florida common law "imposes strict vicarious liability upon the owner of a motor vehicle who voluntarily entrusts that motor vehicle to an individual whose negligent operation causes damage to another" (citing *S. Cotton Oil*, 86 So. at 637)); *Roberts v. U.S. Fid. & Guar. Co.*, 498 So. 2d 1037, 1038 (Fla. 1st DCA 1986) ("[T]he owner of a vehicle is liable to third persons for its negligent operation by

anyone to whom it has been entrusted, even if the bailee grossly violates the owner's express instructions concerning its use." (alteration added; citations omitted)). In 2005, the Graves Amendment, 49 U.S.C. section 30106, ended the vicarious liability of car rental and leasing companies. *See Vargas v. Enter. Leasing Co.*, 60 So. 3d 1037 (Fla. 2011); *Bechina v. Enter. Leasing Co.*, 972 So. 2d 925 (Fla. 3d DCA 2007).

Defendants rely on the doctrine, but the Court frankly fails to understand how such reliance serves to rewrite the language of the Policy or require the conclusion applying the plain language of the Policy's exclusion 10. contravenes public policy. Application of the doctrine would mean the owner of the car, Enterprise Leasing Company, is vicariously liable for the damages sought by Nixon in the state court action; yet, the Graves Amendment preempts Florida law. No one is looking to Enterprise here. Application of the doctrine might also mean Paolino, the one who authorized and permitted "an instrumentality that is peculiarly dangerous in its operation to be used by another on the public highway," *S. Cotton Oil*, 86 So. at 638, is liable for the damages sustained by Nixon. As stated, Paolino is a named defendant in the state court suit. But how application of the doctrine can be extended to make Allstate, the insurer of specified autos for specified insureds under the Policy, liable for Nixon's damages, or serve to rewrite exclusion 10., is not adequately explained anywhere in Defendants' papers or at oral argument. *See Allstate Prop. & Cas. Ins. Co. v. Weny*, No. 3:07-cv-1185-J16-HTS, 2009 WL 88576, at *6 (M.D. Fla. Jan. 13, 2009) ("The scope and extent of insurance coverage is defined by the language and terms of the insurance policy . . . . Because under Florida law an auto policy may condition coverage, there is no requirement that an auto policy contain a specific exclusion or limitation for vicarious liability." (alteration added; citations omitted)).

Defendants also rely on Florida Statute section 627.7263[4] to rewrite the Policy or show a public policy exception to its unambiguous terms. (*See* Resp. 5–6). The purpose of that statute, however, "is to permit the lessor of an automobile to shift primary liability for the leased vehicle to the lessee's insurance carrier, thus rendering its own insurance secondary." *McCue v. Diversified Servs., Inc.*, 622 So. 2d 1372, 1374 (Fla. 4th DCA 1993). "The coverage shifting language of the rental car agreement cannot serve to create coverage where none otherwise exists." *Direct Gen. Ins. Co. v. Vreeman*, 943 So. 2d 914, 916 (Fla. 1st DCA 2006) (citations omitted).

As noted by Allstate, Florida law allows insurers to exclude coverage for their named insureds' use of leased vehicles, as well as for permissive drivers who the named insureds allow to drive the leased vehicles. (*See* Reply 4–5 (citing cases)). Absent a statutory requirement, the Court cannot create coverage where none exists. *See Pastori v. Commercial Union Ins. Co.*, 473 So. 2d 40, 41 (Fla. 3d DCA 1985) (noting plaintiffs' car would have qualified as a "temporary substitute automobile" under defendant's liability policy if that policy had provided such common coverage; yet policy did not, and "in the absence of a statutory requirement for the inclusion of such a clause, the courts have no power simply to create coverage out of the whole

---

[4] Florida Statute section 627.7263 provides:

> Rental and leasing driver's insurance to be primary; exception
>
> (1) The valid and collectible liability insurance or personal injury protection insurance providing coverage for the lessor of a motor vehicle for rent or lease is primary unless otherwise stated in at least 10-point type on the face of the rental or lease agreement. Such insurance is primary for the limits of liability and personal injury protection coverage as required by [sections] 324.021(7) and 627.736.
>
> (2) If the lessee's coverage is to be primary, the rental or lease agreement must contain the following language, in at least 10-point type . . . .

*Id.* (alterations added).

cloth when none exists on the face of an insurance contract" (citations omitted)); *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 739 (Fla. 2002) ("In contract interpretation cases, the issue to be addressed is not what this Court or the petitioner would prefer that the policy cover, but what losses the mutually agreed-upon contractual language covers.").

*Budget Rent-A-Car* does not compel a different result. In that case, the insured rented a car from Budget for one day and allowed it to be used by her boyfriend, who later, while driving the car, got into an auto accident causing injuries to another. *See Budget Rent-A-Car*, 727 So. 2d at 288–89. State Farm sought a declaration it was "not required to protect its insured under a standard family automobile liability policy for liability arising out of the use of a rental car, . . . claim[ing] that the phrase, 'leased by,' in its policy unambiguously includes cars that are 'rented by' its insured, even though its policy squarely distinguishes one type of vehicle from the other." *Id.* at 288 (alterations added). In addressing whether State Farm was required to provide coverage for its insured's vicarious liability for the rental vehicle, the court examined whether the short-term rental car was a "non-owned" car for purposes of the policy, for if so, it would protect the insured. *Id.* at 290. "By equating 'lease' with 'rent,' State Farm [wa]s attempting to eliminate much of the purpose and protection afforded by" a "'non-owned automobile clause.'" *Id.* at 290–91 (alteration added). Because State Farm had not excluded coverage for such an "important risk" with language "far more explicit than the language" in the standard contract, summary judgment in favor of State Farm was reversed in part. *Id.* at 291.

Here, Allstate has included explicit language in exclusion 10., stating it will not be responsible for damages resulting from the use of non-owned autos being driven by certain drivers: "someone other than **you** or a **resident** relative." There is no ambiguity here concerning whether "rental" and "lease" are synonymous. While "exclusionary clauses are to be strictly

construed in favor of coverage, where the insurer has stated clearly what is excluded from coverage, the Court may not ignore the plain meaning of the words employed in order to contort clarity into ambiguity." *Monticello Ins. Co. v. Nat'l Cas. Co.*, No. 6:03-CV1514ORL19KRS, 2005 WL 1425107, at *8 (M.D. Fla. June 16, 2005) (internal quotation marks and citation omitted). Clear language in the Policy excludes from Allstate's coverage and defense obligations[5] precisely the scenario presented here, where an Allstate insured entrusted a non-owned auto to someone other than himself or his resident relatives to drive.

## IV.   CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 36]** is **GRANTED**. Allstate is not required to provide insurance coverage for the claims against Paolino and Stedman in the Broward County state court case, and Allstate has no duty to defend or indemnify Paolino and Stedman in that case. A final judgment will be entered by separate order.

**DONE AND ORDERED** in Miami, Florida, this 4th day of May, 2015.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[5] Under the Policy, if Allstate is not required to pay damages, Allstate also is not required to defend an insured person sued for damages. (*See* Policy 27).